### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| RICHARD E. KEMPE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| BLESSING CORPORATE ) | |
| SERVICES, INC, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| Serve: ) | |
| Maureen A. Kahn – Registered Agent ) | |
| 1005 Broadway ) | |
| Quincy, IL  63201-2834 ) | |

## COMPLAINT

Plaintiff Richard E. Kempe (hereinafter "Plaintiff" or "Kempe"), by and through undersigned counsel, and for his Complaint directed against Defendant Blessing Corporate Services, Inc., states as follows:

### Summary

On December 9, 2019, Blessing Corporate Services, Inc. ("BCS") fired Mr. Kempe and four other hospital executives, all of whom were over 40 years old.  On that day they were told that their jobs had been "eliminated" as part of a company-wide reorganization.  Soon afterword BCS did an about face and claimed that the jobs had <u>not</u> been eliminated.  When pressed further, BCS again changed its story and claimed that the firings were based "part on performance."  None of these reasons was true.  For example, just weeks before being fired, Mr. Kempe received a stellar written performance review.

The real reason why they were fired was because Maureen Kahn, the CEO of BCS, believed that Mr. Kempe and the others were too old to adapt to the changes she planned to make to the hospital system. She described them as "silos" and "barriers to our agility." She even told the hospital system's board of trustees that she fired them as part of her effort to develop a "path to succession management or career development" for other workers. The truth is that Ms. Kahn prefers to have "young thinkers" on her leadership teams.

## Introduction

This lawsuit is being brought by Plaintiff to seek redress for unlawful age discrimination. Plaintiff was subjected to unlawful employment discrimination by virtue of BCS terminating his employment.

1. This cause of action arises out of the Age Discrimination in Employment Act of 1967, as amended 29 U.S.C. §621 *et. seq.,* (hereinafter "ADEA").

2. Plaintiff's date of birth is May 11, 1961 and on December 9, 2019 – the date he was informed his employment was terminated – he was fifty (58) years of age.

3. Plaintiff is within the class of persons protected by 29 U.S.C. 621 *et. seq.*

## Jurisdiction and Venue

4. Jurisdiction of this Court is founded upon 28 U.S.C. §1331 and 1343, as well as 42 U.S.C. § 2000e-5(f).

5. Venue is appropriate under 28 U.S. C. §1391(b), because the unlawful employment practices alleged herein occurred in Quincy, Illinois, where Blessing Corporate Services, Inc is located and employed Plaintiff.

## Exhaustion of Administrative Remedies

6. On or about April 13, 2020, Plaintiff filed a Charge of Discrimination ("Charge")

- 3 -

with the Equal Employment Opportunity Commission alleging age discrimination.

7. A true and accurate copy of Plaintiff's Charge is attached hereto as Exhibit 1.

8. Plaintiff's Charge provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial Complaint may be and is as broad as the scope of the investigation that could reasonably be expected to have grown out of the Charge.

9. Plaintiff received a Notice of Right to Sue on or about June 15, 2021 from the EEOC on his Charge and this action is filed within 90 days from the receipt of that Notice.

10. A true and accurate copy of the Notice of Right to Sue from the EEOC is attached hereto as Exhibit 2.

11. Plaintiff has satisfied and exhausted all private, administrative, and judicial prerequisites to the institution of this action.

## Parties

12. Plaintiff Richard Kempe was, at all relevant times, an individual residing in Quincy, Illinois.

13. At all relevant times, Plaintiff was employed by BCS and worked in Quincy, Illinois.

14. At all relevant times, Plaintiff was an "employee" of BCS within the meaning of the ADEA, 29 U.S.C. § 630(f).

15. BCS operates as a for-profit health care system generally referred to as the Blessing Health System.

16. The Blessing Health System is a multi-service healthcare organization which consists of multiple corporate subsidiaries, which includes at least two hospitals, two physician

groups, and multiple provider service locations and facilities. BCS provides the strategic vision and develops new service opportunities for each member of the Blessing Health System. BCS develops and plans new initiatives and assists in obtaining the necessary resources to implement projects related to the provision of healthcare services in west-central Illinois and northeast Missouri. BCS also monitors the performance, assists with distribution of resources and provides specialized managerial services to the subsidiaries within the Blessing Health System.

17. At all relevant times, BCS has been a domestic corporation doing business in the state of Illinois and has continuously employed more than 300 employees.

18. At all relevant times, BCS has continuously been an employer engaged in an industry affecting commerce.

19. At all relevant times, BCS was an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b).

## Statement of Claims

20. Plaintiff began working for BCS on September 14, 1987.

21. Over the course of 32 years, BCS repeatedly promoted Plaintiff.

22. BCS promoted Plaintiff from Administrative Intern

   a. to Administrative Coordinator Risk Management/Safety in 1987;

   b. to Vice President/Resident Administrator in 1993;

   c. to Vice President, Professional Services in 1994;

   d. to Vice President, Strategic and Business Development, and President and CEO of Denman Services, Inc. in 2001;

   e. to Executive Vice President/Chief Strategy Officer of BCS in 2015.

23.     Shortly before his termination, Plaintiff had two roles: CEO of Denman Services, Inc. and Executive Vice-President/Chief Strategy Officer of BCS.

24.     As CEO of Denman, Plaintiff led the operations of an entity that provides linens and medical supplies to various entities of the Blessing Health System, as well as other hospitals in west-central Illinois.

25.     Effective September 30, 2019, Plaintiff voluntarily relinquished his title of CEO of Denman.  Plaintiff and BCS made the decision in the Spring/early Summer of 2019 because Denman had experienced substantial growth under his leadership and was now ready for its own CEO to manage its operations on a full-time basis.

26.     At the time of his termination, Plaintiff was Executive Vice President/Chief Strategy Officer of BCS.

27.     As Executive Vice President/Chief Strategy Officer, Plaintiff was charged with developing and implementing organization-wide strategic planning efforts.

28.     At all times relevant herein, Plaintiff satisfactorily performed his job and met the expectations of BCS.

29.     Indeed, a few months before Plaintiff's termination, Maureen Kahn told Plaintiff,

> Congratulations! The overall achievement score of our organizational goals during FY2019 was 98.5%.... Achieving goals requires precise planning and flawless execution….You are a member of the Blessing Health System management team because you have the talent to lead a team of people who make goal achievement happen.

30.     A true and accurate copy of Maureen Kahn's letter to Plaintiff is attached hereto as Exhibit 3.

31.     Kahn is the current President/CEO of BCS. Kahn was Plaintiff's most recent direct supervisor.

32. On December 9, 2019, Kahn notified Plaintiff that he was being terminated.

33. Five individuals, including Plaintiff, were impacted as a result of the restructuring and reorganization of BCS. They included:

   i. Elliot Kuida, Chief Operating Officer. Kuida's year of birth is 1961.

   ii. Tim Finlay, Sr. Mgr. Strategic Initiative. Finlay's year of birth is 1961.

   iii. David Loyd, Administrative Director of Ancillary Services. Loyd's year of birth is 1961.

   iv. Emily Hendrickson, Director Critical Care. Hendrickson's year of birth is 1979.

34. All of the individuals terminated were offered a severance agreement (hereinafter "Severance Program").

35. Kahn made the decision to terminate Plaintiff.

36. At the time of the terminations, Kahn informed each of the terminated employees that their job positions had been "eliminated" as part of a plan of reorganization.

37. Kahn's statement was false.

38. The Vice President of Human Resources (JoEllen Randall) stated that Plaintiff's job position was never eliminated.

39. BCS also represented that the decision to terminate his employment was based in part on Plaintiff's performance. This was also a false statement.

40. On December 9, 2019, Plaintiff was presented with a severance agreement.

41. BCS gave Plaintiff until December 31, 2019 to execute and return the severance agreement.

42. BCS stated that it was not willing to negotiate the amount of the severance amount.

43. BCS stated that the amount of the severance (i., 12 months) was consistent with severances offered in the past for similar level of position.

44. Plaintiff signed and returned a severance agreement to BCS on December 31, 2019.

45. The release within severance agreement is void, because it was obtained in contravention of the provisions of the Older Workers Benefits Protection Act ("OWBPA"), 29 USC § 621, *et. seq.*, and its implementing regulations.

46. OWBPA establishes specific requirements for a "knowing and voluntary" release of ADEA claims to guarantee that an employee has every opportunity to make an informed choice whether or not to sign the release. It acts as a safety net to ensure older and vulnerable workers are not unfairly laid off from work and do not experience age discrimination.

47. In particular, the release was not knowing and voluntary because the terms of the severance agreement were unconscionable, and the release was obtained by fraud, duress, and unfair surprise, as described herein.

48. Although five employees were terminated the same day, BCS failed and refused to give Plaintiff a period of at least 45 days within which to consider the severance agreement.

49. Although five employees were terminated the same day, BCS failed and refused to inform Plaintiff as to any class, unit, or group of individuals covered by the Severance Program, any eligibility factors for the Severance Program, and any applicable time limits.

50. Although five employees were terminated the same day, BCS failed and refused to inform Plaintiff as to the job titles and ages of all individuals eligible or selected for the Severance Program and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the Severance Program.

51. In addition, the severance agreement was not "written in a manner calculated to be understood" by Plaintiff, because it was ambiguous, filled technical jargon and used long, complex sentences.

52. Contrary to the OWBPA the severance agreement also purported to release BCS "from any and all causes of action, damages, and claims which he may have now or in the future." In other words, the severance agreement failed to state that Plaintiff does not waive rights or claims that may arise after the execution of the severance.

53. Further, the severance agreement was not given in exchange for consideration "in addition to" anything of value to which he was already entitled, in violation of 29 U.S.C. § 626(f)(1)(D).

54. The severance agreement offered 12 months of compensation and 12 months for Plaintiff's health insurance coverage.

55. Under the terms of BCS's Severance Pay Policy, employees with the title of Vice President/Chief – whose position was eliminated or was terminated without cause – were entitled to receive 12 months of severance pay, 12 months of paid group health insurance, and outplacement assistance.

56. A true and accurate copy of a BCS's Severance Pay Policy is attached hereto as Exhibit 4.

57. Shortly after BCS fired Plaintiff, Kahn issued a written announcement about the terminations to the rest of the leadership at BCS. In it, Kahn said that she had had restructured these five employees' positions and made changes in leadership reporting and responsibility in order to "eliminate silos" within BCS.

58. A true and accurate copy of Maureen Kahn's announcement is attached hereto as

Exhibit 5.

59. In a December 11, 2019 memo to the BCS's Board of Trustees, Kahn reiterated that the terminations were made to eliminate "silos" that were "barriers to our agility." She further explained that the purpose of the terminations was to create a "path to succession management or career development" for the remaining employees.

60. A true and accurate copy of Maureen Kahn's announcement is attached hereto as Exhibit 6.

61. In other words, Kahn announced that she terminated the older "silo" employees so that younger and more agile BCS employees would be able to see their pathways to management and career development.

62. BCS ratified Kahn's ageist bias in a presentation to BCS's new leadership. In the presentation, BCS again confirmed that the reorganization of the corporation structure will address: growth, succession management and eliminate silo thinking.

63. A true and accurate copy of a PowerPoint created by BCS is attached hereto as Exhibit 7.

64. By April 2020, Kahn provided Blessing's Board of Trustees a memo outlining BCS's future. Kahn told the Board that she had formed a "Plan Ahead Team" that would work on a new business model for the health system that would redefine its future. In the memo, she told the board that her team had been "populated with some young thinkers."

65. A true and accurate copy of Maureen Kahn's memo is attached hereto as Exhibit 8.

66. After Plaintiff was terminated, his duties were assigned on a "temporary" basis to Blessing's CFO (Patrick Gerveler) who is significantly younger than Plaintiff.

67. Defendant terminated Plaintiff on December 9, 2019.

68. BCS alleges that Plaintiff was terminated as part of an overall corporate restructuring and reorganization within BCS.

69. BCS alleges that Plaintiff no longer brought sufficient value to the overall operation of BCS.

70. BCS's stated reason for Plaintiff's termination was pretext for discrimination based on Plaintiff's age.

71. Plaintiff's age was a "but for" reason for BCS's decision to terminate Plaintiff's employment.

72. BCS discriminated against Plaintiff because of his age, in violation 29 U.S.C. § 623(a)(1), which makes it unlawful to discriminate against any individual with respect to the compensation, terms, conditions or privileges of employment because of age.

73. BCS's conduct was outrageous and showed complete indifference to or conscious disregard for Plaintiff's rights.

74. BCS's conduct is in violation of the ADEA.

75. As a result of BCS's conduct and the actions alleged herein, Plaintiff has suffered and will continue to suffer lost wages and benefits of employment.

76. As a result of BCS's conduct and the actions alleged herein, Plaintiff has incurred attorneys' fees and costs of litigation.

77. As a result of BCS's conduct and the actions alleged herein, Plaintiff has suffered emotional distress and mental anguish.

78. BCS's conduct was outrageous because of BCS's evil motive or reckless disregard to Plaintiff's right not to be discriminated against. BCS's conduct warrants the imposition of liquidated damages.

WHEREFORE, Plaintiff demands judgment against BCS and prays for: (1) a sum of money making Plaintiff whole for the harm caused, including compensatory damages, liquidated damages, back pay, front pay, lost benefits, damages for emotional distress, humiliation, and diminished employment status; (2) temporary, preliminary, and/or permanent injunctive relief, including but not limited to an Order requiring BCS to refrain from unlawful retaliation; (3) costs and expenses of litigation and a reasonable sum as and for attorneys' fees; (4) pre-judgment interest; and (5) such other and further equitable and legal relief as this Court deems just and proper.

Respectfully submitted,

*Sarah N. Swatosh*

Sarah N. Swatosh, ARDC# 6300994
SEDEY HARPER WESTHOFF, P.C.
2711 Clifton Ave.
St. Louis, MO 63139
314/773-3566
314/773-3615 (fax)
Attorneys for Plaintiff